IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHAWN WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-99-GMS |
| | ) | |
| WACHOVIA BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff, Shawn Wright ("Wright"), who proceeds *pro se*, initiated the above-captioned action by filing a complaint against Jim Liguori ("Liguori") and Wachovia Bank, N.A. ("Wachovia") on February 14, 2008. At the time Wright filed the complaint, he was incarcerated in a federal correctional facility. Wright now resides in the State of Delaware and is no longer incarcerated. Presently before the court are Wachovia's motion for summary judgment (D.I. 86) and Wright's motion for leave to amend (D.I. 116). For the reasons that follow, the court will deny Wright's motion for leave to amend and grant Wachovia's motion for summary judgment.

### II. BACKGROUND

On November 12, 2003, the Superior Court of New Castle County, Delaware issued a Search and Seizure warrant for "any and all monies and records held by First Union/Wachovia under the name Shawn Wright." (Id.) On January 12, 2004, Wachovia was served with a second warrant issued by the Superior Court of New Castle County for "any and all monies and records held by Wachovia Securities under the name Shawn Wright." (Id.) Both warrants included an affidavit by Detective Donald Pope ("Pope") of the Delaware State Police setting forth the circumstances and events giving rise to the search. In the affidavits, Pope concluded that "the

monies contained within the Wachovia Securities Accounts [were] proceeds from Wright's ongoing drug sales."[1] (Id. at 5.)

On January 9, 2004, the DEA seized two of Wright's Wachovia bank accounts, which had balances totaling $1,909.33 and $31,852.38. (D.I. 114 at 1.) On February 23, 2004, the DEA sent Wright two separate notices informing him of the seizures. (Id.) On March 1, 2004, the DEA seized Wright's third Wachovia account, totaling $31,553.78; the DEA notified Wright of this seizure on April 13, 2004. (Id.) Wright admits that he received each of these notices, either individually or through James Liguori ("Liguori"), his attorney at that time. (Id.) Through Liguori, "Wright executed verified administrative claims for each of these accounts under penalty of perjury on March 23, 2004, April 14, 2004, and April 23, 2004," respectively. (Id.)

On July 13, 2004, the United States filed a verified complaint *in rem* in this court, seeking forfeiture of Wright's three Wachovia bank accounts. (D.I. 1 in Civil Action No. 04-854.) On June 13, 2005, the court entered default judgment in favor of the United States, and the judgment was upheld by the United States Court of Appeals for the Third Circuit. (See D.I. 2 in C.A. No. 04-854.) Wright then filed a *Bivens* action against Liguori, which was dismissed *sua sponte* as frivolous and for failure to state a claim. (See D.I. 6 in C.A. No. 07-209.) Wright filed another complaint, pursuant to 42 U.S.C. § 1983, with the same allegations and damages against Liguori and his firm, Liguori, Morris & Yiengst, which was also dismissed *sua sponte*. (See C.A. No. 07-445.)

On February 14, 2008, Wright filed the instant action, this time asserting claims against Wachovia in addition to Liguori. The complaint did not explicitly state the legal basis for for Wright's claims against Wachovia, but the allegations appeared to be consistent with a state law

---

[1] The seizure of these accounts apparently stemmed from Wright's November 3, 2003 arrest for distribution of cocaine. (See D.I. 86 at 4.)

2

negligence claim. (See D.I. 2 at 3.) In his various filings, Wright alleged that on January 20, 2007, he received records from Wachovia informing him that: 1) a "Wachovia computer error was responsible for the DEA's seizure of his bank accounts;" 2) "Wachovia engaged in negligent conduct regarding the money seized from accounts;" 3) "Wachovia was negligent by not providing Wright with notice of the seizure of the funds and by providing incomplete or inaccurate records to the DEA;" and 4) the "records he received from Wachovia in 2007 do not reflect a complete history of his transactions with Wachovia." (D.I. 63 at 6-7; D.I. 114 at 7-10.)

On September 30, 2009, the court dismissed Wright's claim against Liguori and his firm for lack of subject matter jurisdiction, but denied Wachovia's motion to dismiss. (D.I. 63.) On June 17, 2010, Wachovia filed its motion for summary judgment, arguing that that Wright's claims are time-barred and that, in any case, that Wright's negligence claims fail as a matter of law. (See D.I. 86 & D.I. 87.) On January 31, 2011, Wright filed his answering brief opposing Wachovia's motion. (See D.I. 114.) In it, he recasts his claims against Wachovia as allegations that Wachovia violated the Right to Financial Privacy Act ("RFPA") when it disclosed Wright's financial records, permitted the DEA to seize his accounts, and failed to inform Wright that warrants were issued for his accounts. (See id. at 21.)

On February 24, 2011, Wright filed a motion to amend his complaint against Wachovia violation so that he might allege RFPA violations under 12 U.S.C. 3401 *et seq*. (D.I. 116.) In his motion to amend, Wright characterized his claims against Wachovia as follows:

> Clearly all of my claims submitted on February 14, 2008 [the date Wright filed his original complaint] are from violations of my financial privacy. It is foolish for defendant Wachovia Bank to assert that I am claiming a new cause of action after our exchanging of discovery and deposition. My entire claims were clarify (sic) in my deposition. . . . The foundation of my complaint against Wachovia #1-6 concerns my bank documents held with Wachovia Bank N.A. and the negligence under title 12 us 3401.

(Id.)

3

## III. STANDARD OF REVIEW

A grant of summary judgment is appropriate only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). If the moving party has carried its burden the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). Moreover, "the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49 (internal quotation marks omitted).

## IV. DISCUSSION

For the purpose of deciding this motion, the court will assume without deciding that Wright's complaint is not time-barred, and will instead focus on the merits of Wright's claims.

The court will deny Wright's motion for leave to amend his complaint because the court concludes that such an amendment would be futile. The court will also grant Wachovia's motion for summary judgment and dismiss Wright's complaint. The court's reasoning follows.

Wright's original complaint does not expressly state the legal basis for his claims against Wachovia. Based on the allegations contained in the complaint, however, Wachovia and the court both have surmised that Wright was attempting to state a claim for negligence under Delaware law. (See D.I. 43 & D.I. 63.) Wright has not, however, provided either evidence or explanation supporting a claim for negligence. Indeed, Wright's answering brief opposing Wachovia's motion to dismiss makes no effort to argue that his original complaint supports a claim for negligence. Nowhere does Wright specify the duty and standard of care that Wachovia owed him, what actions by Wachovia breached that duty, how that breach was the actual and proximate cause of Wright's damages, and how his alleged damages of $750,000 stemmed from Wachovia's conduct. *See Hazel v. Delaware Supermarkets, Inc.*, 953 A.2d 705, 709 (Del. 2008) (laying out the traditional "duty, breach, causation, and damages" components of a *prima facie* negligence claim).

Instead, Wright's answering brief attempted to recast his allegations against Wachovia as a claim for monetary damages based on violations of RFPA. (See D.I. 114 at 21-23.) In his motion to amend, Wright provided an even stronger indication that he not pursuing a state law negligence claim against Wachovia by asserting that the claims in his original complaint "[c]learly . . . are from violations of [his] financial privacy. " (D.I. 116 at 2.) He further clarified that "the foundation of my complaint against Wachovia . . . concerns my bank documents held with Wachovia . . . and the negligence under title 12 [U.S.C. §] 3401," the code section containing RFPA. (Id.) Indeed, the court cannot locate any document where Wright expressly

5

states that he is asserting state law negligence claims against Wachovia under Delaware law, rather than through RFPA. In any case, since Wright has failed to make the showing necessary to establish a *prima facie* case for negligence, the court will dismiss the complaint to the extent that it asserts a claim for negligence under Delaware law.

The court will also dismiss the complaint and deny Wright leave to amend his complaint to the extent that he seeks to assert claims under RFPA. The text of RFPA states that "no Government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution . . . ." 12 U.S.C. § 3402. The chapter limits "Government authority" to "any agency or department *of the United States*, or any officer, employee, or agent thereof." 12 U.S.C. § 3401(3) (emphasis added). The November 12, 2003 and January 12, 2004 warrants that Wright asserts as the bases for his RFPA claims (see D.I. 114 at 21) were both issued to a Delaware state law enforcement officer by a Delaware state court. (See D.I. 87, Ex. C & Ex. D.) While these disclosures may have been part of an investigation that eventually included seizures of Wright's accounts by the DEA, the challenged warrants themselves were issued solely by state officials. Thus, giving Wright leave to amend so that it states a claim under RFPA would be futile.

## V. CONCLUSION

For the reasons stated above, the court will grant the defendant's motion for summary judgment and deny Wright's motion to amend.

Dated: July 11, 2011

CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SHAWN WRIGHT, )
)
        Plaintiff, )
)
v. ) Civil Action No. 08-99-GMS
)
WACHOVIA BANK, N.A., )
)
        Defendant. )
)

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED THAT:

1. Wachovia's motion to dismiss (D.I. 86) is GRANTED.

2. Wright's motion to amend (D.I. 116) is DENIED.

3. The above-captioned matter is dismissed with prejudice.

4. The Clerk of Court is directed to close this case.

Dated: July _11_, 2011

_____
CHIEF, UNITED STATES DISTRICT JUDGE